**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**CAROL KORTRIGHT-CONKLIN,**

                                        **Plaintiff,**
        **v.**                                                          **1:21-cv-1305**

**LOWE'S HOME CENTERS, LLC,**

                                        **Defendant.**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

## I.    INTRODUCTION

    Plaintiff Carol Kortright-Conklin ("Plaintiff") commenced this negligence action against Defendant Lowe's Home Centers, LLC ("Lowe's" or "Defendant") in the Supreme Court of the State of New York, County of Ulster, and the case was removed to this court based on diversity jurisdiction. *See* Dkt. Nos. 1-2.  Plaintiff sustained injuries on October 15, 2018 at a Lowe's Home Improvement retail store while attempting to reach a product (a space heater) on a shelf above her eye level. *See* Dkt. No. 2.  Plaintiff stepped on a wooden pallet to reach the product but, while doing so, her left hand lost its grip due to an allegedly slippery surface on the shelf causing her to fall and sustain injuries.  *See id.*  Plaintiff contends that Defendant failed to maintain the store in a reasonably safe condition resulting in her fall. *Id.*

Defendant moves for summary judgment, Dkt. No. 22, which Plaintiff opposes, Dkt. No. 28, and Defendant files a Reply, Dkt. No. 30.  For the reasons that follow, Defendant's motion is granted.

## II.   BACKGROUND

On October 15, 2018, Plaintiff went to a Lowe's Home Improvement retail store located in Kingston, New York to buy propane space heaters for her farmhouse. Defendant's Rule 56.1 Statement of Material Facts ("Def. 56.1 Stat."), Dkt. No. 22-3, ¶ 16.[1]  Plaintiff found the particular type of space heater she was looking for at the end cap of an aisle. *Id.*, ¶ 21.  In general, the store displayed merchandise both at the floor level and on racking units with shelves. *Id.*, ¶ 22. The end cap where the incident occurred had a racking unit with shelves on which merchandise was displayed. *Id.*, ¶ 23. There was also merchandise displayed on pallets at floor level beneath the first shelf. *Id.*, ¶ 24.

On the date of the incident, there were two propane space heaters of the kind Plaintiff wanted to buy at the end cap. *Id.*, ¶ 27.  One was located on a shelf within the racking unit and the other was located on a pallet on floor level beneath the shelves. *Id.*, ¶ 29.  Plaintiff intended to purchase both of these propane space heaters. *Id.*, ¶ 31. She

---

[1] The Court cites to Defendant's Rule 56.1 Statement of Material Facts where a statement is adequately supported in the record and Plaintiff either admits or fails to provide an adequate basis to deny the statement. *See* Local Civil Rule 56.1 (formerly Local Civil Rule 7.1(a)(3)); *see also Colton v. New York Division of State Police*, 2017 WL 5508911, at *2 (N.D.N.Y., 2017)("Once a properly supported Local Rule 7.1(a)(3) Statement of Material Facts is submitted, the non-moving party must file a response to the movant's Statement of Material Facts. This requires a statement that mirrors the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. The failure to properly controvert a supported statement of fact by pointing to admissible evidence contravening the movant's evidence results in the movant's statement being deemed admitted.")(cleaned up).

first removed the space heater from the pallet beneath the shelving. *See* Plaintiff's Deposition Transcript ("Pl. Dep."), pp.  62-64. The pallet that the space heater was on was beneath the first shelf, so Plaintiff had to reach beneath the shelf to get the space heater. Def. 56.1 Stat., ¶ 33.  Plaintiff's incident occurred when she was attempting to remove the second space heater from one of the shelves on the racking unit. *Id.*, ¶ 34.

The second space heater was located on a shelf that was above Plaintiff's eye level. *Id.*, ¶ 35.  Standing with her feet on the ground, Plaintiff was able to touch the shelf with her hand. *Id.*, ¶ 37.  However, the heater was located toward the back of the shelf, so Plaintiff was unable to reach it when standing on the ground. *Id.*, ¶ 38.  There were ladders in the store, but they were marked as available for employee use only. *Id.*, ¶ 137.  Plaintiff walked around the store looking for a Lowe's employee to assist her, but when she could not locate an employee she returned the end cap area. *See* Pl. Dep. at 132-136.  After the event in question, Plaintiff told a Lowe's employee that she was in a rush because her granddaughter and great-granddaughter were in her car waiting for her. *See* Def. 56.1 Stat., ¶¶ 17-18, 101.

Plaintiff asserts that she had seen pallets used by people to step on before, including one time by a Lowe's employee to retrieve a bird feeder for her. Pl. Dep*., at 75-79.  Plaintiff attempted to reach the heater by stepping on the wooden pallet from which she had removed the first space heater. Def. 56.1 Stat., ¶ 39.  Plaintiff did not move the pallet before she stepped on it. *Id.*, ¶ 43.  Plaintiff stepped on the part of the pallet that was closest to her. *Id.*, ¶ 44. Plaintiff stepped both feet onto the pallet without incident. *Id.*, ¶ 45.  Plaintiff stood on her "tippy toes" at the edge of the pallet. *Id.*, ¶ 46.  Because the pallet was located beneath the shelving, Plaintiff's feet were also beneath

the shelving. *Id.*, ¶ 47. The wooden pallet was not broken in any way, it did not move under Plaintiff's feet, and Plaintiff did not lose her footing on the pallet. *Id.*, ¶¶ 77-81. Plaintiff is not claiming that anything was wrong with the pallet, *id.*, ¶ 81, and admits that she did not make any complaints to Lowe's about the pallets or know of anyone else who did. *Id.*, ¶¶ 85-86.  Plaintiff admits that no one instructed her to step on the pallet, and that it was her sole discretion to do so. *Id.*, ¶¶ 83-84.

While standing on the pallet, Plaintiff initially grasped with her left hand on the post or railing that was part of the racking holding the shelves. Pl. Dep., pp. 113-114. Plaintiff then reached her right hand toward the space heater, which was located on the "middle back" of the shelf.  *Id.*, pp. 94, 116.  Plaintiff was able to touch the box for the space heater, but it was too large to grasp in her right hand alone. Def. 56.1 Stat., ¶ 50. Because she could not fully grasp the box, Plaintiff used the fingertips on her right hand to "scoot" and "twist" the box toward her. Def. 56.1 Stat., ¶ 52.  Plaintiff spent about 20-30 seconds trying to move the box toward her with her right hand, all while standing on the wooden pallet. *Id.*, ¶ 53.  During that time, Plaintiff was able to move the box a couple inches in her direction. *Id.*, ¶ 54.  However, Plaintiff was not able to reach the box with her left hand. *Id.*, ¶ 56.

After moving the box a couple inches toward her, Plaintiff moved her left hand to the shelf to see if she could reach the box with that hand.  Pl. Dep., at p. 119.  The incident occurred when Plaintiff placed her left hand on top of the shelf to "get leverage." Def. 56.1 Stat., ¶ 59.  Plaintiff contends the shelf was a heavy metal material but had paper on it. Pl. Dep., at 53, 54, 119, 121, 127.  She describes the paper as a cardboard

heavy paper that she had seen on pallets. *Id.* at 121.  Plaintiff contends that this paper had dust or sawdust on it.  *Id.* at 66, 71, 119, 127.

Plaintiff was only able to get her left palm on the shelf for a split second. Def. 56.1 Stat., ¶ 62.  When Plaintiff attempted to place her left hand flat on the shelf, her hand slipped toward her causing her to lose her balance and fall backwards. *Id.*, ¶ 60. Plaintiff contends that she "lost her grip" on the shelf because the cardboard paper and sawdust on the shelf made the surface of the shelf smooth and slippery.  Pl. Dep., 66, 71, 119, 127.  Plaintiff's right hand was touching the space heater box and her feet were on the pallet when her left hand lost its grip. *Id.*, ¶¶ 75-76.

Plaintiff testified as follows:

Q. And as you were moving the box with your right hand a couple of inches, did you keep your left hand on the shelf?

A. No. I went to see if I could reach with my left hand. And I set it down on the paper. And it had sawdust. And that's when my hand slipped. I lost my balance. And I had nowhere to grab it. Fell off.

Q: Okay. Let me just make sure I understand. At some point, you removed your left hand from the shelf that you were grabbing, correct?

A: Yes.

Q: And you tried to put it where?

A: Flat. I wanted to get leverage. So, I put it flat on the shelf. And there was some kind of sawdust or something very slippery. And I lost my grip. I couldn't reach for anything. And I went back.

Q: What do you mean you were trying to get leverage?

A: I was trying to - - I didn't want to go backwards and hold onto the thing. I laid my hand flat, and was going to reach up more and see if I could get more fingers on it to pull it forward. And when I laid my hand flat, I never made it that far because my hand slipped on sawdust. And I lost my grip completely. That's when I fell.

Q: Okay. You said that you put your hand on paper?

A: Yeah.

Q: What paper did you - -

A: Paper that comes on the pallets. You've seen it, paper on the pallets. There's paper. And there was paper of some sort there. And it slip [sic] or something. It was very slippery. And my hand lost grip.

Q: Okay. Let me just make sure I understand. Was there paper located on the shelf that the space heater was on?

A: I believe so.

Q: Do you know one way or the other whether there was paper there?

A: Been a while. No, I don't remember.

Q: Okay. So - - okay. So it's possible that there was not any paper there at all?

A: There had to be - - yes. There had to be paper. I don't remember it being - -.

Q: Why would there have to be paper on the second shelf?

A: Because I have a good grip, and there was nothing for me to hold on. I - - it was like ice. Slipped right back, off, on the ground.

Q: Okay. Did you actually feel paper underneath your hand?

A: Felt something very slippery at that point.

Q: Okay. I understand that you're saying you felt something slippery. I'm asking you, did you actually feel paper? Because it sounds like you're just saying - -

A: Not that I remember.

Q: Okay. Not that you remember?

A: Right.

Q. Okay. But when you put your hand there, it slipped?

A. Correct.

Q. But you don't know if it slipped on some paper or something else?

A. Could have been cardboard. I don't know.

Q. You don't know what it was?

A. Yeah.

* * *

Q. Okay. Now, you first mentioned that there might have been some paper down. But now as I understand your testimony, you don't know one way or the other whether there was paper there, correct?

A. It was either paper or cardboard. Something smooth. It wasn't wood. It wasn't metal. It was smooth and somewhere I could not even get a grip with my hands.

*Id*. at pp. 119-122, 127.

In response to Lowe's Interrogatories, Plaintiff alleged that her "hand slipped off of the metal shelving because of the dust thereon therefore causing her to fail in gripping the object." Def. 56.1 Stat., ¶ 70.  After she fell, Plaintiff did not see any dust on the shelf or on her hand. *Id*., ¶¶ 73-74.  At her deposition, Plaintiff testified regarding the presence of dust on the shelf:

Q. You previously mentioned the word "sawdust."  Where was there sawdust?

A. Could have been on the paper, the cardboard.  Whatever they were using on the platform up there, it was some kind of dust of some sort that was very slippery?

Q. Okay. Did you actually visualize the dust?

A. No.

Q. Okay. Could you describe for me in any way what it looked like?

A. No.

Q. Can you describe for me what color it was.

A. No, I didn't see it.

Q. When -- after you were on the ground, did you see any dust on your hand?

A. No. I was in shock.

Pl. Dep. at 127-128.

Despite alleging in response to Lowe's Interrogatories that the shelving was "flimsy and shakable," Plaintiff admits that she did not feel the shelving unit shaking or wobbling at any point on the date of the incident. Def. 56.1 Stat., ¶ 91; Pl. Dep., 138. She also admits that she saw nothing that led her to believe that the shelving unit was unable to adequately hold the merchandise it was displaying. Def. 56.1 Stat., ¶ 92; Pl. Dep., 138. Plaintiff admits that she had not made any prior complaints about the shelving units at Lowe's, and that she did not know of anyone else who did. Def. 56.1 Stat., ¶¶ 93-94.

Jesse Ostrowski, a loss prevention manager for Lowe's, was in the store on the date of the incident. Def. 56.1 Stat., ¶¶ 95-96.  After Ostrowski learned that a customer had been injured, he went to the customer service area and spoke with Plaintiff. *Id.*, ¶¶ 97-99.  Plaintiff said that she fell while attempting to climb the rack to reach a product, that she was in a rush, and that her kids were in the car. *Id.*, ¶¶ 100-101.  Plaintiff testified that she does not remember telling Ostrowski that she climbed the rack on the date of the incident. Pl. Dep. at 160.  After speaking with Plaintiff, Ostrowski went to the area of Plaintiff's incident but did not see anything that would cause anyone to fall.  Def. 56.1 Stat., ¶¶ 103-104.  Ostrowski was not aware of any complaints from customers

about not being able to reach items on the shelves at Lowe's, and was not aware of any other incidents where a customer fell while attempting to reach for an item on a shelf. *Id.*, ¶¶ 105-106.

Steven Krut, an assistant store manager for Lowe's on the date of the incident, accompanied Ostrowski to the customer service area to speak with Plaintiff. *Id.*, ¶¶ 108-110.  Plaintiff said that she fell while trying to climb the racking.  *Id.*, ¶ 111.  Plaintiff accompanied Krut to the merchandise rack where the incident occurred. *Id.* ¶ 112.  At the incident location, Plaintiff again told Krut that she had climbed up the racking to get a product off the shelf. *Id.*, ¶ 113.[2]  Plaintiff pointed out the shelf that she was attempting to reach. *Id.*, ¶ 114.  Plaintiff testified that when she spoke to Krut, she did not "mean climbing of the racking. I meant reaching up in the racking because there was no way to climb. So no, I do not remember any of this, no. . . .  I said I was going up onto the racking. But I did not mean that I climbed up it, the racking."  Pl. Dep. at 157.   Plaintiff did not say anything to Krut about a wooden pallet, and did not describe any conditions to Krut that contributed to her fall. Def. 56.1 Stat., ¶¶ 115, 118.  While at the incident location, Krut looked to see if there were any conditions present that may have contributed to Plaintiff's accident but did not see any such conditions. *Id.*, ¶¶ 116-117.

---

[2] On several of Defendant's statements of material facts concerning statements by Lowe's employees, Plaintiff responds: "Admitted. Deny the substance of the conversation." Under the Civil Local Rules, this is an improper denial of the substance of Defendant's properly supported statements. *See McKnight v. Dormitory Auth. of State of N.Y.*, 189 F.R.D. 225, 227 (N.D.N.Y. 1999)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); *see also Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 291 (2d Cir. 2000)(The Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out.")(internal quotation marks and citations omitted).

Susan DeMark, a Lowe's customer service associate on the date of the incident, interacted with Plaintiff shortly after she fell. *Id.*, ¶¶ 121-122.  Plaintiff purportedly told DeMark that she had fallen from one of the endcap racks onto the floor after she climbed it to the third shelf. *Id.*, ¶ 124.  Plaintiff testified that DeMark's statement was incorrect because "there is no way I could have reached the third shelf. I would have had to have a ladder. Was, actually, the first actual physical shelf." Pl. Dep. at 151-152. When asked if it was her testimony that she did not tell a Lowe's employee that she had climbed the rack to the third shelf, Plaintiff responded: "Correct. They should have had a video. Yeah, no, I did not." *Id.* at 152.

Ostrowski, Krut, and DeMark each prepared written statements regarding their interactions with Plaintiff.  *Id.*, ¶¶ 107, 119, 123.  None of these written statements make any reference to dust, state that Plaintiff's hand slipped on paper, state that Plaintiff's hand slipped on cardboard, or make any reference to a wooden pallet. *Id.*, ¶¶ 125-128.

Plaintiff sought medical treatment at Ellenville Regional Hospital on October 19, 2018. *Id.*, ¶ 129.  The Nursing Assessment conducted during triage for that visit states, in part: "Four days prior, pt fell backwards in Lowe's after climbing up to get a heater off shelf…".  *Id.* ¶ 130.  The History of Present Illness note from the same visit states, in part: "She was in a store and reaching for an item high on a shelf and lost her balance falling backward and landing on her right buttocks." *Id.*, ¶ 131.  When asked during her deposition if she told her medical providers that she fell while attempting to climb a shelf at Lowe's, Plaintiff responded, in part: "…I don't remember that.  It might be. If it's in the medical records, then I did say [it], but I don't remember now." *Id.*, ¶ 132.

Plaintiff had an appointment with Steven K. Jacobs, M.D., Ph.D. of New York

Neurosurgical, PLLC, on October 22, 2018. *Id.*, ¶ 133.  The History of Present Illness note for that visit states, in part: "She fell 3 feet when she was climbing on a shelf at Lowe's." *Id.*, ¶ 134.  When asked during her deposition if she remembered telling Dr. Jacobs that she fell while attempting to climb a shelf at Lowe's, Plaintiff responded: "I don't remember if I told him that or not."  *Id.*, ¶ 135.

As indicated above, there were ladders in the Lowe's store but they were marked as available for employee use only. Ostrowski testified that items for sale in the store are generally placed on the lower shelves that he described as the "selling space." Ostrowski Deposition Transcript ("Ostrawski Dep."), at 42.  He indicated that if the selling space is full, items are placed on higher shelves and moved to the selling space by Lowe's employees when space becomes available or when a customer asks to have a product brought down. *Id.*  Ostrowski testified that it would be possible to climb the racks although, in his opinion, it would be unsafe. *Id.*, at 49-51. Ostrowski also testified that, at the time, the Lowe's store did not have any signs telling customers not to climb the racks or otherwise climb up to reach items on the shelves.  *Id.* at 52, 66-67. Ostrowski further testified that prior to the incident in question, he was not aware of any complaints by customers because they were unable to reach items on display on high shelves. *Id.*, 54.  Ostrowski was also not aware of any prior incidents of customers falling while trying to reach items on high shelves. *Id.*

There is no dispute that Lowe's conducts a daily review of the store to check for safety issues. Def. 56.1 Stat., ¶ 136.

## III.    STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, *see Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011).  "A fact is material if it might affect the outcome of the suit under the governing law." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in her favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the Court must view all admissible facts in the light most favorable to the nonmoving party, it need do so "only if there is a 'genuine' dispute as to those facts."

*Scott*, 127 S. Ct. at 1776. The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," *Matsushita.,* 475 U.S. at 586, or by a factual argument based on "conjecture or surmise." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). In this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *see Tango v. Costco Wholesale Corp*., 2021 U.S. Dist. LEXIS 10046, *9-10 (E.D.N.Y. Jan.19, 2021).[3]

## IV.    DISCUSSION

### Applicable Law

The parties do not dispute that New York law applies in this diversity case. Under New York law, "[t]o establish a *prima facie* case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon v. City of New York*, 66 N.Y.2d

---

[3] ("[W]hen the moving party has carried its burden[,] ... its opponent must do more than simply show that there is some metaphysical doubt as to the material facts," *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505.)

1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (N.Y. 1985); *see Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020)(same). It is well settled that a property owner has a duty to maintain its property in a reasonably safe condition, and, further, that liability may be imposed for any foreseeable injuries arising from an unsafe or dangerous condition. *Thomas v Albany Housing Authority,* No. 535033, 190 N.Y.S.3d 177, 178, 2023 N.Y. Slip Op. 02815, 2023 WL 3632139 (N.Y. App. Div., May 25, 2023)(cleaned up).  However, "[t]he existence of a duty alone and the mere happening of an accident do not establish liability on the part of a defendant; rather, plaintiff is required to connect her injury to a breach of duty by defendant and to show that defendant's acts were a substantial cause of the events which produced the injury." *Gunther v. Airtran Holdings, Inc.*, No. 05 Civ. 2134 (MHD), 2007 U.S. Dist. LEXIS 7424, at *30 (S.D.N.Y. Jan. 24, 2007) (citing *Foley v. Golub Corp.*, 252 A.D.2d 905, 907 (N.Y. App. Div. 1998)) (internal citations and quotation marks omitted).

When a defendant moves for summary judgment in a premises liability case, it can meet its initial burden to show that it did not breach its duty to the plaintiff by establishing "that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it." *Ricci v. Walmart Stores East, LP*, No. 16-CV-69, 202018 U.S. Dist. LEXIS 153996 (S.D.N.Y. 2018), at *11 (citations omitted).  In federal court, unlike in New York state courts, the defendant is not required to affirmatively disprove every element of the plaintiff's claim, and "may discharge its burden of proof merely 'by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim.'" *Vasquez v. United States*, 2016 U.S. Dist. LEXIS 7796, at *14, 2016 WL 315879 (S.D.N.Y. Jan. 15,

2016)(quoting *Zeak v. United States*, No. 11 Civ. 4253 (KPF), 2014 U.S. Dist. LEXIS

148758, at *22 (S.D.N.Y. Oct. 20, 2014)); *see Espriel v. Starbucks Corp.*, 2023 U.S.

Dist. LEXIS 4507, at *8-9 (S.D.N.Y. Jan. 10, 2023); *Puello v. Jetro Cash & Carry*

*Enters., LLC*, No. 18 Civ. 1645, 2020 U.S. Dist. LEXIS 19273, 2020 WL 564573, at *2 n.

1 (S.D.N.Y. Feb. 5, 2020).  If a defendant meets its initial burden, the burden then shifts

to the plaintiff to "present evidence on each element of the claim and demonstrate that a

genuine issue of material fact exists for trial." *Ricci*, 2018 U.S. Dist. LEXIS 153996, at

*12.

**Parties' Arguments**

Defendant argues:

Plaintiff cannot establish that anything Lowe's did or did not do departed
from expected or reasonable behavior under the circumstances. Even
viewing the facts in a light most favorable to Plaintiff, there are three
freestanding and independent grounds for summary judgment. First,
because Plaintiff cannot identify a defective condition that Lowe's failed to
remedy, she cannot establish that Lowe's breached any duty to her, and
thus her negligence claims fail as a matter of law. Second, even if a
defective condition arguably existed, Plaintiff's claims still fail because she
cannot make the necessary showing that Lowe's created or had actual or
constructive notice of the condition. Third, the record, including Plaintiff's
own testimony, firmly establishes that it was Plaintiff's own actions that
proximately caused her alleged injuries. Accordingly, summary judgment
should be granted.

Def. Br. at 4.

Plaintiff argues:

[I]t was foreseeable that a patron would use the pallet located immediately
adjacent and under the ground floor shelving unit to reach for an item on a
high shelf. The shelf had slippery dust and paper bits on it. The paper had
been improperly placed so long ago that it had already accumulated dust
which the plaintiff felt when she placed her hand on the shelf.

Pl. Br. 2.

Pointing to Ostrowski's deposition transcript, Plaintiff further argues that Lowe's had no protocol on how it arranged its items for sale on the shelves and had no signs warning customers from attempting to get items down from high shelves. Pl. Br. at 5. Plaintiff contends that customers, like herself, were free to attempt to get large items down from high shelves if they can reach and grab the items, which is what Plaintiff contends she was attempting to do. *Id*. at 6.  Plaintiff maintains that Lowe's was negligent "in that they not only created the dangerous situation but allowed it to exist and still allows it to exist today, and that large and heavy items are still placed on higher shelves and remain there as long as they do accumulating dust and whatever is up there, with lighter items placed on lower shelves. No warning signs existed to detract people from reaching higher shelves. Ostrowski testified that was the way it was done and still is today." *Id*.  Plaintiff asserts:

> Credibility is the province of a jury and requires summary judgment be denied. A rational jury could believe or find in favor of the Plaintiff's testimonial evidence and find the paper and accumulated dust was a hazardous slippery condition and that using the empty pallet to reach an item was a foreseeable occurrence. Causation and comparative fault are factual determinations by the jury. The Defendant's Motion should therefore be denied.

*Id.*

### Existence of a Dangerous or Defective Condition

"To establish a breach of duty in a premises liability case a plaintiff must first show the existence of a dangerous or defective condition." *Lyman v. Petsmart, Inc.*, No. 16 Civ. 04627 (JCM), 2018 U.S. Dist. LEXIS 162424, at *12, 2018 WL 4538908 (S.D.N.Y. Sep. 21, 2018) (citing *Vasquez v. United States*, No. 14-CV-1510 (DF), 2016 U.S. Dist. LEXIS 7796, at *4, 2016 WL 315879 (S.D.N.Y. Jan. 15, 2016)); *cf. Thomason*

*v. Target Corp.*, No. 20 Civ. 8982 (JPC), 2022 U.S. Dist. LEXIS 71084, 2022 WL 1137165, at *3 (S.D.N.Y. Apr. 18, 2022) ("In slip-and-fall cases, a plaintiff must first show 'the existence of a dangerous or defective condition.'")(quoting *Winder v. Exec. Cleaning Servs., LLC*, 91 A.D.3d 865, 936 N.Y.S.2d 687, 688 (N.Y. App. Div. 2012)). "[A] plaintiff must be able to point to a specific condition that caused her injury." *Vasquez*, 2016 U.S. Dist. LEXIS 7796, at *16, 2016 WL 315879, at *5 (citing *Siegel v. City of New York*, 86 A.D.3d 452 (N.Y. App. Div. 2011)). "The mere fact that plaintiff fell does not satisfy this requirement." *Espriel,* 2023 U.S. Dist. LEXIS 4507, at *10 (interior quotation marks and citations omitted).

Plaintiff's contention that there was paper and dust on the shelf borders on being merely speculative. She presents no evidence that she or anyone else actually saw the paper or dust on the shelf. Nonetheless, construing Plaintiff's evidence in the light most favorable to her, she presents sufficient evidence to create a question of material fact as to whether a slippery surface existed on the shelf. Plaintiff asserts that she felt the slippery surface on the shelf when she placed her left hand on it to gain leverage. This satisfies Plaintiff's initial burden.

### Defendant Either Created the Dangerous Condition, or had Actual or Constructive Notice of its Existence for a Period of Time Sufficient to Discover and Remedy It

"To succeed on a premises liability claim alleging any injury caused by a defective condition, the plaintiff must demonstrate that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it." *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. June 4, 2008) (summary

order); *see Rivera v 916 Peekskill Main Realty*, 147 A.D.3d 802, 803, 46 N.Y.S.3d 201

(N.Y. App. Div. 2017).

Defendant argues that even assuming that Plaintiff's allegations raise a question

of fact regarding the existence of a dangerous condition, Plaintiff's claims still fail as a

matter of law because there is no evidence that Lowe's created the condition or had

actual or constructive notice of it.  Defendant maintains that there is no evidence from

which a reasonable jury could infer that Lowe's "created a dangerous condition, let

alone any specific, credible evidence that a dangerous condition resulted from an

'affirmative, deliberate, and intentional' act by a Lowe's employee." Def. Br. at 9.

Defendant argues that Plaintiff's primary contention appears to be that there was dust

on the shelf that caused her hand to slip. But "[b]ecause there is no evidence beyond

Plaintiff's speculation that any dust was present in the first place," Defendant contends,

"there is certainly no evidence of Lowe's employees performing a deliberate act to

create the alleged condition." *Id.* at 9-10.

Defendant also argues that Plaintiff cannot show that Lowe's had actual or

constructive notice of an allegedly dangerous condition. *Id.* at 10-11.  In this regard,

Defendant argues that there is no evidence that Lowe's was actually aware, or should

have been aware, of a dangerous condition in the area of Plaintiff's incident.  Defendant

maintains that it is undisputed that Plaintiff had not previously made complaints to

Lowe's about its wooden pallets or its shelving units, Plaintiff did not know of anyone

else who had made such complaints, and Ostrowski confirmed that the store did not

receive any complaints from customers about not being able to reach items on the

shelves and that the store had not had any previous incidents where customers fell

while attempting to reach items high on the shelves. *Id.* at 11 (citations omitted). Defendant asserts: "There is simply no record evidence whatsoever that the store was aware of any condition that contributed to Plaintiff's incident. Absent prior incidents or complaints about the shelving, there is no basis for a jury to conclude that Lowe's was actually or constructively aware of a dangerous condition." *Id.*

Plaintiff counters that there are substantial material questions of fact as to whether Defendant had constructive notice of the paper and accumulated dust on the shelf. Pl. Br. at 8-12. Plaintiff argues that although she testified that she had not seen the defect before her accident, "her testimony and the other evidence submitted in the motion would allow an inference of constructive notice (i.e., accumulated dust on the paper)." *Id.* at 9. She contends that "the large amount of dust was evidence that the paper had been improperly placed for a substantial period of time." *Id.* at 9-10. Plaintiff maintains that "there are triable issues of fact as to whether Lowe's and their employees had notice of the dangerous condition that they had created and there are triable issues of fact as to whether there was constructive notice due to the dusty paper under the items on the top shelf." *Id.* at 11. Plaintiff asserts that "[a] reasonable jury could conclude that the defect arising from the paper and dust had been in place for a significant time and the accumulation of dust made the paper slippery and also demonstrated that the conditions were subject to discovery due to the lapse of time to cause the accumulation of dust." *Id.* At 11-12. Plaintiff further argues that "Defendant's witness testified that employees and ladders were readily present for customers which allows an inference that they were also available to continuously make reasonable inspections." *Id.* at 12.

**Created the Condition and Had Actual Notice**

Defendant argues in its Reply that Plaintiff "does not dispute, and therefore concedes, that Lowe's neither created nor had actual notice of the alleged condition." Def. Reply at 4.  Defendant maintains that by failing to argue or present evidence on these issues Plaintiff has abandoned any claim that Lowe's created or had actual notice of the alleged condition. *Id.* at 5 (citing *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) ("Where, as here, a counseled non-moving party submits a partial response arguing that summary judgment should be denied as to some claims while not mentioning others, that response may be deemed an abandonment of the unmentioned claims.") (internal quotations and citation omitted); *Ortiz v. Wal-Mart Stores East, LP*, No. 17-cv-00945 (NSR), 2019 U.S. Dist. LEXIS 40933, at *8 (S.D.N.Y. Mar. 13, 2019) ("The Court may dismiss as abandoned claims that are unaddressed in Plaintiff's opposition.")).

In the Northern District of New York, "where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have 'consented' to the legal arguments contained in that memorandum of law under Local rule 7.1(a)(3)." *West Coast Servicing, Inc. v. Giammichele*, 2022 WL 391424, at *4 (N.D.N.Y., 2022).  "Stated another way, when a non-movant fails to oppose a legal argument asserted by the movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a 'modest' burden." *Id.* (citing N.D.N.Y. L.R. 7.1(a)(3); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y.

Oct. 30, 2009)(collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (collecting cases)).

The alleged dangerous condition was a slippery surface on a shelf above eye level caused by paper and accumulated dust.  Defendant has presented facially meritorious arguments that Plaintiff fails to show that Defendant either created or had actual notice of this condition.

To demonstrate that a defendant created a dangerous condition, Plaintiff must show that some affirmative act by the defendant resulted in the condition. *Henry v. Target Corp.*, No. 16-CV-8416 (JPO), 2018 U.S. Dist. LEXIS 123702, at *6 (S.D.N.Y. July 24, 2018).  Plaintiff's burden "is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that Defendant created the hazardous condition." *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 319 (E.D.N.Y. 2014).  Even if a plaintiff can credibly infer that the defendant created the condition, she must show that the creation was an "affirmative, deliberate and intentional" act by the defendant. *Nussbaum v. Metro-N. Commuter R.R.*, 994 F. Supp. 2d 483, 493 (S.D.N.Y. 2014), *aff'd* 603 Fed. Appx. 10 (2d Cir. 2015) (citations omitted). Passive activity does not amount to an affirmative act.  *Lyman v. PetSmart, Inc.*, No. 16-CV-4627 (JCM), 2018 U.S. Dist. LEXIS 162424, at *15-*16 (S.D.N.Y. Sept. 21, 2018)(internal quotation marks and citation omitted).  Additionally, "'a plaintiff who alleges that a defendant created a dangerous condition must prove, not only that the defendant knew or had reason to know of the condition, but that the defendant knew or had reason to know of the danger, i.e., that the condition it created was dangerous.'" *Holley v. Marriott Int'l*, No. 15-CV-6823 (ARR) (LB), 2017 U.S. Dist. LEXIS 233522, at

21

*11 (E.D.N.Y. Sep. 5, 2017) (quoting *Nussbaum v. Metro-N. Commuter R.R.*, 603 Fed.

Appx. 10, 12 (2d Cir. 2015)).

As to whether Plaintiff demonstrates that Defendant created the alleged

dangerous condition, Defendant argues:

> Here, there is no evidence from which a reasonable jury could infer that
> Lowe's created a dangerous condition, let alone any specific, credible
> evidence that a dangerous condition resulted from an "affirmative, deliberate,
> and intentional" act by a Lowe's employee. Plaintiff's primary contention
> appears to be that there was dust on the shelf that caused her hand to slip.
> Because there is no evidence beyond Plaintiff's speculation that any dust
> was present in the first place, there is certainly no evidence of Lowe's
> employees performing a deliberate act to create the alleged condition.
> Absent such evidence, summary judgment on that issue is warranted.

Pl. Br. at 9-10.   By failing to oppose these facially meritorious arguments, Plaintiff is

deemed to have consented to summary judgment on the issue of whether

Defendant created the alleged dangerous condition. *See West Coast Servicing*,

2022 WL 391424, at *4. Further, even if Plaintiff's papers can be construed as

opposing Defendant's arguments that Defendant did not create the alleged

dangerous condition, Defendant's motion on this issue would be granted for the

reasons argued by Defendant.

"'To prove actual notice, plaintiff must present proof that defendants were, in

fact, aware of the dangerous condition.'" *Wilson v. Wal-Mart Stores East, LP*, No. 16

CIV. 8637 (JCM), 2018 U.S. Dist. LEXIS 159441, at *20 (S.D.N.Y. Sept. 18, 2018),

*appeal dismissed* (Feb. 1, 2019) (quoting *Castellanos v. Target Dep't Stores, Inc.,*

No. 12 Civ. 2775 (GWG), 2013 U.S. Dist. LEXIS 111969, at *12, 2013 WL 4017166

(S.D.N.Y. Aug. 7, 2013)). Conclusory references to actual notice are insufficient. *See*

*Strass v. Costco Wholesale Corp.*, 2016 U.S. Dist. LEXIS 79340, *14 (E.D.N.Y, June

22

17, 2016)("Aside from conclusory references to 'actual notice,' Plaintiffs do not identify any evidence that would support a finding that Costco was, in fact, aware of the condition that allegedly caused Strass's fall, and the Court's review of the record reveals none."). "Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition." *Nussbaum*, 603 Fed. Appx. at 12;  *see Lyman*, 2018 WL 4538908, at *6 ("A defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition that caused the fall."); *Thaqi v. Wal-Mart Stores E., LP*, No. 09-CV-755, 2014 U.S. Dist. LEXIS 45107, 2014 WL 1330925, at *4 (E.D.N.Y. Mar. 31, 2014) ("To constitute actual notice, a plaintiff must prove that the defendant  received a report of or was otherwise aware of the dangerous condition. . . . Even if a plaintiff demonstrates that the defendant had actual notice of the condition, the defendant is entitled to a reasonable opportunity to correct the hazardous condition.").

As to whether Plaintiff demonstrates that Defendant had actual notice of the alleged dangerous condition, Defendant argues:

> Here, there is no evidence that Lowe's was actually aware, or should have been aware of a dangerous condition in the area of Plaintiff's incident. It is undisputed that Plaintiff had not previously made complaints to Lowe's about its wooden pallets or its shelving units. [Def. Statement of Material Facts ("SOMF")], at ¶¶85-86, 93-94; Exhibit G (Plaintiff's Deposition), at p. 148. Nor did Plaintiff know of anyone else who had made such complaints. Jesse Ostrowski, the loss prevention manager of the store, confirmed that the store did not receive any complaints from customers about not being able to reach items on the shelves and that the store had not had any previous incidents where customers fell while attempting to reach items high on the shelves. SOMF, at ¶¶105-106; Exhibit H (Ostrowski Deposition), at p. 54.

> There is simply no record evidence whatsoever that the store was aware of any condition that contributed to Plaintiff's incident. Absent prior incidents or

complaints about the shelving, there is no basis for a jury to conclude that
Lowe's was actually or constructively aware of a dangerous condition.

Pl. Br. at 11.  By failing to oppose these facially meritorious arguments to the extent
they are addressed to whether Defendant had actual notice of the alleged dangerous
condition, Plaintiff is deemed to have consented to summary judgment on this issue.
*See West Coast Servicing*, 2022 WL 391424, at *4.  Further, even if Plaintiff's papers
can be construed as opposing Defendant's arguments that Defendant did not have
actual notice of the dangerous condition, Defendant's motion on this issue would be
granted for the reasons argued by Defendant.

### Constructive Notice

"Absent evidence that defendant either created or had actual notice of the
allegedly dangerous condition, plaintiff can only prevail on her claims if she can
establish that defendant had constructive notice of the condition." *Tango*, 2021 U.S.
Dist. LEXIS 10046, *19 (citing *Ruggiero v Waldbaums Supermarkets*, 242 A.D.2d 268,
269, 661 N.Y.S.2d 37, (N.Y. App. Div. 1997) ("Where, as here, there is no evidence that
the store created a dangerous condition by stacking small juice cans on the top shelf or
had actual notice that the cans were 'lopsided', the plaintiffs must proceed on the theory
of constructive notice.")).  "To constitute constructive notice, a defect must be visible
and apparent and it must exist for a sufficient length of time prior to the accident to
permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of
Natural History*, 67 N.Y.2d 836, 838, 501 N.Y.S.2d 646, 492 N.E.2d 774, 775 (N.Y.
1986).  "Even 'a general awareness that a dangerous condition may be present is
legally insufficient to constitute notice of the particular condition that caused plaintiff's
fall.'" *Tango*, 2021 U.S. Dist. LEXIS 10046, *19 -*20 (citing *Piacquadio v. Recine Realty*

24

*Corp.*, 84 N.Y.2d 967, 969, 622 N.Y.S.2d 493, 646 N.E.2d 795, 796 (N.Y. 1994); *Taylor v. U.S.*, 121 F.3d 86, 90 (2d Cir. 1997) ("In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the particular condition at issue.")).  "'Constructive notice arises when the defendant should have known of the defect as a result of the condition's manifest nature and the length of time the condition was in existence prior to the accident.'" *Id.* (quoting *Castellanos*, 2013 WL 4017166, at *5).

The record fails to demonstrate that Defendant had constructive notice of the allegedly defective condition. As Defendant argues, Plaintiff submitted no evidence that the alleged condition was visible and apparent to Lowe's employees. In fact, there is no evidence that Plaintiff herself ever saw the alleged condition. Even when Plaintiff showed store employees the incident area after she fell, she did not identify anything that contributed to her fall. "Courts have found insufficient evidence to raise a triable issue of fact regarding whether a condition was visible and apparent where a plaintiff did not see the condition prior to a fall, or offer evidence that others saw the condition prior to the fall." *Leandro v. Wal-Mart Supercenter Store #2104*, No. 19-cv-2108 (JCM), 2021 U.S. Dist. LEXIS 123546, at *26-27 (S.D.N.Y. June 30, 2021) (citation omitted); *see Yates v. Costco Wholesale Corp.*, No. 19-cv-4023 (ENV) (RLM), 2021 U.S. Dist. LEXIS 261060, at *23 (E.D.N.Y. June 30, 2021) (noting that "courts in the Second Circuit regularly grant summary judgment for defendants and find that a hazard was not visible and apparent when the plaintiff did not see the defect prior to her injury") (internal

quotation and citation omitted). Plaintiff offers no evidence that the condition, which was located above eye-level, was visible to anyone before Plaintiff's fall.

Further, even if the alleged paper and dust was visible to Lowe's employees, there is no evidence that the alleged danger was apparent. Courts analyzing constructive notice consider not only whether the condition itself was visible and apparent, but also whether the danger presented by the condition was apparent.  *See Taylor v. U.S.*, 121 F.3d 86, 90 (2d Cir. 1997) ("In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the particular condition at issue."); *Castellanos v. Target Dep't Stores, Inc.*, No. 12 Civ. 2775, 2013 U.S. Dist. LEXIS 111969, 2013 WL 4017166, at *5 (S.D.N.Y. Aug. 7, 2013)("Constructive notice arises when the defendant should have known of the defect as a result of the condition's manifest nature and the length of time the condition was in existence prior to the accident." ); *accord Schiano v TGI Friday's*, 205 A.D.2d 407, 407, 613 N.Y.S.2d 881 (N.Y. App. Div. 1994); *Espriel v. Starbucks*, 2023 U.S. Dist. LEXIS 4507, at *10-*13 (S.D.N.Y. Jan. 10, 2023); *Brisbois v. United States*, No. 1:03-cv-1214 (TJM), 2005 U.S. Dist. LEXIS 48174, at *13-*19  (N.D.N.Y. June 1, 2005).

Here, Plaintiff fails to present evidence of prior accidents or complaints concerning the allegedly dangerous condition. Even if it could be reasonably inferred that Lowe's employees were aware of dust or papers on store shelves, there was no reason for anyone to believe that paper or dust presented any injury risk to customers.

Plaintiff contends that it was foreseeable that a customer would step on a

pallet to reach an item high on the shelves, and that she had personally seen people do so in the past. But she concedes that there was nothing wrong with the pallet, that the pallet did not move under her feet, and that she did not lose her footing on the pallet.

Because the pallet had nothing to do with Plaintiff's fall, whether it was foreseeable that a customer would use a pallet as a step stool is beside the point. What is relevant is whether the dangerous condition - that is, paper and accumulated dust on a high shelf - was apparent and posed a risk to customers.  Plaintiff's claim falters on several levels.

First, the facts indicate that there were ladders available in the store for Lowe's employees to use to retrieve products from high shelves for customers. Although Plaintiff was in a hurry and could not locate a Lowe's employees to help her, those facts do not create liability on Defendant's part. *See Alfaro v. Wal-mart Stores, Inc.,* 210 F.3d 111, 116 (2d Cir. 2000)(a store had no duty to assist a wheelchair-bound customer in retrieving paint cans from high shelves simply because the plaintiff was a customer in the store without the customer seeking help); *cf. Stanton v. Manhattan East Suite Hotels*, 2002 WL 31641127, at *3 (S.D.N.Y., 2002)("Here, the facts are not indicative of a duty to provide Plaintiff with assistance with her luggage. Plaintiff did not request assistance with her luggage and there is no evidence that Defendants voluntarily assumed a duty to help her in this manner and then acted unreasonably. There is nothing in the record to indicate that Defendants knew or should have known that Plaintiff required assistance ascending the escalator.").

Second, to the extent that a "slippery" condition existed, it was on a shelf located above most customers' eye level, and thus presented no slip or trip hazard to any

customer acting reasonably.  Even if a customer's hand unexpectedly touches a "slippery" piece of paper or dust on a shelf while reaching for a product, that customer is not at any risk of losing his or her balance.  Indeed, the only way something "slippery" on a shelf could possibly cause a customer to lose his or her balance is if a customer went "up onto the racking," Pl. Dep. at 157, and used the shelves to "gain leverage," like Plaintiff did here.  Plaintiff presents insufficient evidence that Lowe's had previously encountered such a situation, and rather the record evidence indicates the opposite.

Third, to establish an issue of fact on constructive notice, Plaintiff was obligated to show both that the condition was visible and apparent and that the condition existed for enough time for employees to discover and remedy it. *Thaqi v. Wal-Mart Stores East, LP*, No. 09-cv-755 (JMA), 2014 U.S. Dist. LEXIS 45107, at *15-*16 (E.D.N.Y. Mar. 31, 2014).  Plaintiff argues, in essence, that the alleged presence of dust on the paper or shelf suggests that the alleged "condition" was present for sufficient time for Lowe's to discover and remedy it.  Plaintiff's speculative argument fails to raise a material question of fact.  Plaintiff fails to submit competent evidence to meet her burden on either issue.  Plaintiff's unsupported speculation that Lowe's employees could have discovered the paper and dust on the shelves because there were ladders in the store is insufficient. Likewise, Plaintiff's unsupported speculation that the condition must have existed for enough time to enable Lowe's employees to discover and remedy the situation is also insufficient.  Plaintiff presented no evidence that Defendant's employees had any reason to know that paper and dust on the shelves posed a danger to patrons, especially where, as here, Plaintiff presented

28

no evidence of prior accidents or complaints concerning reaching for products on high shelves or patrons falling while trying to do so.  "[E]even crediting Plaintiff with every reasonable favorable inference available on this record, she has still failed to proffer any evidence to establish that the [the paper and dust on the shelf] reached the threshold level of dangerousness, or, if it did, how long the condition existed before Plaintiff's fall. While the [paper and dust] might have been [present] on [October 15, 2018], there is no evidence that the dangerousness of the condition was 'apparent,' or, even if it was, how long it existed prior to Plaintiff's fall. Accordingly, Plaintiff has not established that Defendant had constructive notice of a dangerous condition on [October 15, 2018] under the traditional method of establishing such notice." *Brisbois*, 2005 U.S. Dist. LEXIS 48174, at *18 (citations omitted).

Fourth, while a plaintiff can establish constructive notice "by evidence that an ongoing and recurring dangerous condition existed in the area of the accident which was routinely left unaddressed by the defendant, to establish notice under the recurring dangerous condition theory, Plaintiff must show that her fall was caused by a specific recurrence of a recurring dangerous condition about which defendant had actual notice." *Id.*, at *20-21 (cleaned up).  "Unlike the cases that have found constructive knowledge through the recurrence of a dangerous condition, here there is no evidence that Defendant's employees ever had an awareness that [paper and dust] created a slippery condition on the [shelves]." *Id.*, at *21 (citations omitted). "Without an awareness that a dangerous condition repeatedly presented itself, the claim of negligence premised upon the recurring dangerous condition theory fails." *Id.* (citations omitted).

29

In the end, Plaintiff fails to present sufficient evidence upon which it could reasonably be concluded that Defendant had constructive notice of the dangerous condition on the shelves in the Kingston store.  For this reason, and for reasons discussed above, Defendant's motion for summary judgment is granted.

**V.      CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment, Dkt. No. 22, is **GRANTED**.  The Clerk is respectfully directed to entered judgment for Defendant and close the file in this matter.

 **IT IS SO ORDERED.**

Dated: September 5, 2023

Thomas J. McAvoy
Senior, U.S. District Judge